## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF TENNESSEE, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) . ) | |
| PINNACLE PROPERTIES V, LLC, | ) ) | _____ |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff First National Bank of Tennessee ("FNBT") and files its Complaint for Declaratory Judgment against Defendant Pinnacle Properties V, LLC ("Pinnacle"), respectfully showing this Court as follows:

### JURISDICTION & VENUE

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship and the amount in controversy exceeds $75,000.

2.

FNBT is a citizen of Tennessee for diversity purposes. See Wachovia Bank

v. Schmidt, 546 U.S. 303, 307 (2006); Office of the Comptroller of the Currency, United States Department of the Treasury, National Bank Lists, *available at* http://www.occ.treas.gov/topics/licensing/national-bank-lists/index-national-bank-lists.html (last viewed May 13, 2011).

3.

Pinnacle is a Georgia limited liability company with its principal office address located at 630 Kennesaw Due West Road, Kennesaw, Cobb County, Georgia 30152. Pinnacle may be served by serving its Registered Agent, Robert J. Proctor, 8010 Roswell Road, Atlanta, Fulton County, Georgia 30350. See Federal Rules of Civil Procedure Rule 4(h).

4.

There are no pending actions which defeat this Court's jurisdiction.

5.

This Court has personal jurisdiction over Pinnacle.

6.

Venue is proper against Pinnacle in this Court under 28 U.S.C. § 1391(a) because the claims arose in this district and the property at issue in this matter is located in this district.

**STATEMENT OF FACTS**

7.

On May 7, 2007, Alpha Bank & Trust ("Alpha") extended a loan to Pinnacle in the principal amount of $14,250,000.00 ("Alpha Loan") in exchange for a Promissory Note which matured on May 7, 2009.  A true and correct copy of the Promissory Note is attached hereto and fully incorporated herein as Exhibit "A".

8.

FNBT is the successor-in-interest to Alpha with respect to the Alpha Loan and related security interests.

9.

On even date with the Promissory Note, Pinnacle, along with Due West, LLC and Forty-One Ventures, LLC, gave Alpha a Deed to Secure Debt, Assignment of Rents and Security Agreement ("Alpha Security Deed"), recorded on May 9, 2007, at Deed Book 14486, Pages 3146-3162 in the Cobb County, Georgia Records, for the property described in Exhibit "A" of the Deed (hereinafter "Alpha Tract").  A true and correct copy of the Alpha Security Deed is attached hereto and fully incorporated herein as Exhibit "B".

10.

The Alpha Tract consists of approximately 27 acres located on Kennesaw

Due West Road in Kennesaw, Cobb County, Georgia.  The Alpha Tract has been cleared and developed, and there is one partially completed building on the Alpha Tract at present.

11.

Pinnacle's failure to pay the Alpha Loan is an event of default.  See Deed to Secure Debt, ¶ 10(i).  It is also a default for "any claim of priority superior to this Deed by title, lien or otherwise [to] be asserted in any legal or equitable proceeding."  Id. at ¶ 10(v).

12.

Also on May 7, 2007, George Nemchik and Nemchik, LLC signed Guaranties by which they each, respectively, guarantied the payment of the Alpha Loan.  A true and correct copy of the Nemchik Guaranty is attached hereto and fully incorporated herein as Exhibit "C", and a true and correct copy of the Nemchik, LLC Guaranty is attached hereto and fully incorporated herein as Exhibit "D".

13.

Pinnacle also entered into an Assignment of Borrower's Interest in Contracts, Documents, and Rights ("Assignment") for the benefit of Alpha on May 7, 2007.  A true and correct copy of the Assignment is attached hereto and fully

- 4 -

incorporated herein as Exhibit "E".

14.

The Loan was originated by Alpha which participated minority interests in it to Republic Bank of Georgia and Rockbridge Commercial Bank with Alpha as the Originating/Lead Bank.

15.

Alpha was placed into receivership by the Federal Deposit Insurance Corporation, as Receiver for Alpha ("FDIC-Alpha") on October 24, 2008.

16.

On September 21, 2009, FDIC-Alpha sold Alpha's Originating/Lead Bank position in the Alpha Loan to FNBT, and FNBT became the Lead Bank on the Loan.

17.

On August 20, 2007, approximately three (3) months after obtaining the Alpha Loan, Pinnacle obtained a loan from Omni National Bank, now Metro Bank, ("Omni/Metro") and gave Omni/Metro a Deed to Secure Debt, Assignment of Rents, and Security Agreement ("Omni/Metro Security Deed") recorded at Deed Book 14528, Page 2016 of the Cobb County Records for the property located adjacent to the Alpha Tract (hereinafter the "Omni/Metro Tract"). The loan from

Omni/Metro to Pinnacle is hereafter referred to as the Omni/Metro Loan.

18.

Together, the Alpha Tract and the Omni/Metro Tract contain approximately 34 acres (collectively the "Pinnacle Property"). The Pinnacle Property is purportedly related to the Bonds described below.

19.

The Omni/Metro Loan retained its first security position with respect to the Omni/Metro Tract, and Omni/Metro foreclosed on its Tract on October 5, 2010.

20.

On November 29, 2007, Alpha, Pinnacle, Nemchik, LLC and George Nemchik entered into an Agreement ("November 29, 2007 Agreement") which provides that Alpha agreed to the transfer of the Alpha Tract to the Kennesaw Development Authority, a public authority ("KDA"), as part of revenue bond financing for construction of improvements on the Alpha Tract as long as such transfer did not diminish the obligations of Pinnacle, Nemchik and Nemchik, LLC and as long as such transfer was not a modification of the Alpha Loan. A true and correct copy of the November 29, 2007 Agreement is attached hereto and fully incorporated herein as Exhibit "F".

21.

Specifically, the November 29, 2007 Agreement provides that: "Lender hereby consents to the transfer of the Property to the KDA, which transfer will be subject to the [Alpha] Security Deed." See November 29, 2007 Agreement, ¶ 1.

22.

Omni/Metro, Pinnacle, Nemchik, LLC and George Nemchik entered into an Agreement identical to the November 29, 2007 Agreement but with respect to the Omni/Metro Tract.

23.

On December 1, 2007, Pinnacle entered into the following agreements with KDA as part of the planned revenue bond financing: (1) Purchase, Sale, Financing, and Option Agreement ("Purchase Agreement"), (2) Rental Agreement, and (3) Master Management Service Agreement ("Management Agreement") (hereinafter collectively "KDA Agreements").

24.

The Purchase Agreement, a true and correct copy of which is attached hereto and fully incorporated herein as Exhibit "G", provides that KDA would pay Pinnacle $11,624,900.00 at the closing for the purchase of the Pinnacle Property with the balance of the purchase price paid by December 31, 2008. See Purchase

Agreement, ¶ 1.2.

25.

Pinnacle agreed to convey the Pinnacle Property, that being the Alpha Tract and the Omni/Metro Tract, to KDA "free of all claims, liens, and encumbrances of any kind or nature whatsoever other than the *Permitted Exceptions*, herein defined." Id. at ¶ 1.5 (emphasis added).

26.

The Alpha Security Deed was defined in the Purchase Agreement as one of the "Permitted Exceptions." Id.

27.

The Omni/Metro Security Deed was also defined in the Purchase Agreement as a "Permitted Exception". Id.

28.

The Purchase Agreement provides that Pinnacle "shall locate and identify purchaser(s) of Pilot Bonds in the original aggregate principal amount of at least $13,500,000.00. [KDA] shall promptly issue Pilot Bonds in the original aggregate principal amount of $13,500,000, to provide funds to pay a portion of the Purchase Price, to fund a debt service reserve fund to secure the Pilot Bonds, to fund capitalized interest on the Pilot Bonds, and to pay the costs of issuing the Pilot

Bonds." <u>Id.</u> at ¶ 2.1.

29.

Under the Purchase Agreement, Pinnacle has the option to repurchase the Pinnacle Property from KDA in accordance therewith. <u>Id.</u> at ¶¶ 3.1-3.2.

30.

KDA gave Pinnacle a Deed to Secure Debt and Security Agreement for the sale of the Alpha Tract and the Omni/Metro Tract on December 1, 2007, recorded at Deed Book 14567, Pages 5558-5573 in the Cobb County, Georgia Records, and attached hereto and fully incorporated herein as <u>Exhibit "H"</u>.

31.

The Rental Agreement entered into by Pinnacle as the tenant and KDA as the landlord was recorded on May 2, 2008 at Deed Book 14604, Pages 4568-4580 in the Cobb County, Georgia Records.   A true and correct copy of the Rental Agreement is attached hereto and fully incorporated herein as <u>Exhibit "I"</u>.

32.

The Rental Agreement provides that Pinnacle would develop and sell to KDA improvements including a "phased mixed-use development consisting of office and retail components." <u>See</u> Rental Agreement, p. 1.

33.

The amount of the rent, as set forth in the Rental Agreement, is Ten Dollars ($10.00). Id. at ¶ 4.

34.

The Management Agreement between Pinnacle and KDA, a true and correct copy of which is attached hereto and fully incorporated herein as Exhibit "J", was entered to engage Pinnacle "to provide management services with respect to the [Pinnacle Property] and the Improvements." See Management Agreement, p. 1.

35.

Pursuant to the Management Agreement, Pinnacle has "the sole and exclusive right to manage and operate the Project pursuant to the terms of this Service Agreement for the compensation described in Article IV hereof. . . [and] shall be solely responsible for the Project and the Services provided to [KDA] hereunder, including physical possession, operation, control, and custody of the Project and including all improvements, maintenance and operating means, methods, techniques, procedures, and safety and security programs employed in connection with the Project." Id. at Section 2.1.

36.

On even date with the KDA Agreements, Pinnacle and KDA also entered

into that Master Pilot Agreement, recorded on December 28, 2007, at Deed Book 14567, Pages 5530-5548 in the Cobb County, Georgia Records, a true and correct copy of which is attached hereto and fully incorporated herein as Exhibit "K".

### 37.

The Master Pilot Agreement requires Pinnacle to make payments in lieu of ad valorem taxes in "an amount equal to the ad valorem property taxes that would be due if title to the Project were vested in the Manager [Pinnacle]." See Master Pilot Agreement, ¶¶ 1-2. Penalties or interest are assessed for failure to make said payments. Id. at ¶ 5.

### 38.

The Master Pilot Agreement specifically provides that Alpha's Loan is superior. Id. at ¶ 8.

### 39.

According to the Master Pilot Agreement,

> Any deed to secure debt, mortgage, or other instrument securing any Loans (as defined in the Purchase Agreement) shall provide that the payments required by paragraph 2 above shall be superior in priority to the payment of the principal of, premium, if any, and interest on the Loans and shall provide that title to the Project shall not be transferred from the Authority pursuant to such security instrument before the Indenture is fully discharged.

Id. at ¶ 8.

40.

The Purchase Agreement defines "Loans" as "*obtaining* loans ("Loans")
from seller and other lenders." See Purchase Agreement, p. 1 & ¶ 4.7 (emphasis
added).

41.

In contrast, the Purchase Agreement specifically refers to and defines the
Alpha Security Deed, which already existed, as a "Permitted Exception." Id. at ¶
1.5.

42.

Regions Bank is the Trustee of the Bonds pursuant to that Trust Indenture
and Security Agreement ("Trust Agreement") entered into by and between KDA
and Regions Bank on December 1, 2007, a true and correct copy of which is
attached hereto and fully incorporated herein as Exhibit "L".

43.

KDA also assigned its right, title and interest in the Master Pilot Agreement
and Parcel Pilot Agreements to Regions Bank, as Trustee, on December 1, 2007, in
the Assignment recorded on December 28, 2007, at Deed Book 14567, Pages
5549-5557, "to secure the payment of the Series 2007 Bonds and all additional
bonds issued under the Indenture. . . ."

44.

KDA issued the "Kennesaw Development Authority Economic Development Revenue Bonds, Series 2007A" (Number RA-1) to Nemchik, LLC on December 20, 2007 in the principal amount of $13,500,000.00 ("Bonds"). A true and correct copy of the certificate of the Bonds is attached hereto and fully incorporated herein as Exhibit "M".

45.

The Bonds are payments in lieu of taxes ("PILOT") bonds such that payments are sought from the Pinnacle Property to the bondholder in lieu of paying ad valorem taxes but without encumbering the Pinnacle Property.

46.

The Bonds accrue interest and mature on December 1, 2040. See Trust Agreement, Section 302 (p. 24).

47.

On December 20, 2007, Pinnacle, Due West, LLC and Forty-One Ventures, LLC gave KDA a Quitclaim Deed to the Alpha Tract, which was recorded on December 28, 2007 at Deed Book 14567, Pages 5524-29 in the Cobb County Records, and which is attached hereto and fully incorporated herein as Exhibit "N". Pinnacle did not properly execute the Quitclaim Deed.

48.

Pinnacle, Due West, LLC and Forty-One Ventures, LLC also separately gave KDA Limited Warranty Deeds on December 20, 2007, which are attached hereto as <u>Exhibits "O", "P" and "Q"</u>, respectively.   Again, Pinnacle did not properly execute the Limited Warranty Deed.

49.

The day the Bonds issued, December 20, 2007, Alpha, Pinnacle and KDA entered into an Estoppel Agreement which specifically refers to the KDA Agreements as well as the Alpha Loan.  A true and correct copy of the Estoppel Agreement is attached hereto and fully incorporated herein as <u>Exhibit "R"</u>.

50.

The Estoppel Agreement provides that:

> WHEREAS, in connection with the [KDA Agreements] . . ., Borrower intends to convey title to the Property to KDA, has requested Lender consent to such conveyance, and a condition of such consent is that Borrower collaterally assign the [KDA] Agreements to Lender, and KDA enter into this agreement with Lender.

<u>See</u> Estoppel Agreement, p. 1.

51.

Further, in the Estoppel Agreement, Alpha, Pinnacle and KDA agreed that the Alpha Loan was superior to the KDA Agreements, as follows:

> The Agreements and rights of the parties thereunder are in all respects subject to the Loan and the Security Instruments, as same may hereafter be modified, renewed or extended, and to all future advances made under the Loan.

See Estoppel Agreement, p. 2, ¶ 2.

52.

The Estoppel Agreement also confirmed that Alpha may foreclose its

interest in the Alpha Tract, stating as follows:

> In the event Lender [Alpha] becomes the owner of the Property by foreclosure, conveyance in lieu of foreclosure or otherwise, upon request of Lender, KDA shall perform and observe its obligations under the Agreements with Lender. Lender shall not, however, be liable for any act or omission of Borrower, subject to any offsets or defenses which KDA might have against Borrower, nor shall Lender be bound by any amendment or modification of the Agreements made without its consent, not to be unreasonably withheld or delayed.

See Estoppel Agreement, p. 2, ¶ 3.

53.

Omni/Metro, Pinnacle and KDA entered into an identical Estoppel

Agreement but with respect to the Omni/Metro Tract and the Omni/Metro Loan.

54.

Pinnacle again ratified and affirmed Alpha's superior position in that First

Amendment to Assignment of Borrower's Interest In Contracts, Documents, and

Rights ("First Amendment") entered on March 27, 2008. A true and correct copy

- 15 -

of the First Amendment is attached hereto and fully incorporated herein as <u>Exhibit "S"</u>.

55.

The First Amendment amended the May 7, 2007 Assignment from Pinnacle to Alpha to include

> the KDA Agreements and all of Borrower's right, title and interest therein *pari passu* in accordance with the acreage or real property secured by the Security Instruments, which Borrower collaterally assigns to Lender under the terms of the Agreement, together with any and all future agreements entered into between Borrower and KDA concerning the Property.

<u>See</u> First Amendment, ¶ 1.  Otherwise, the Assignment of Borrower's Interests in Contracts, Documents and Rights "shall remain in full force and effect and unchanged, and the parties ratify and affirm same." <u>Id.</u> at ¶ 2.

56.

On or about April 25, 2008, Pinnacle, KDA, Omni/Metro, and Alpha entered into a Declaration Concerning Easements, Restrictions and Operation ("Declaration") recorded on May 2, 2008 at Deed Book 14604, Pages 4586-4632 in the Cobb County Records, regarding development of the Alpha Tract and Omni/Metro Tract.  A true and correct copy of the Declaration is attached hereto and fully incorporated herein as <u>Exhibit "T"</u>.

57.

A document entitled "Agreement" was recorded on June 30, 2008 at Deed Book 14620, Pages 4857-58, Cobb County, Georgia Records and purports to have been executed on June 26, 2008 by Johnny R. Myers, President and CEO of Alpha, and Nemchik for Pinnacle ("Unenforceable Agreement").

58.

The Unenforceable Agreement describes the conveyance of the Alpha Tract to KDA and the resulting exemption from ad valorem taxation.  See Unenforceable Agreement, ¶¶ 1-2.

59.

The Unenforceable Agreement further states that:

> As a result of such exemption, and notwithstanding anything to the contrary contained in the Security Deed, the payments required by paragraph 2 of the Master Pilot Agreement (the "Pilot Agreement"), dated as of December 1, 2007, between KDA and Pinnacle, shall be superior in priority to the payment of the obligations of Grantor secured by the Security Deed the same as if such payments were ad valorem real estate taxes levied and assessed on the Property in the ordinary course of business in the State of Georgia, and title to the Property shall not be transferred from KDA pursuant to the Security Deed before the Trust Indenture and Security Agreement, dated as of December 1, 2007, between KDA and Regions Bank, as trustee, is fully discharged.

See Unenforceable Agreement, ¶ 3.

60.

Paragraph 5 of the Unenforceable Agreement, however, provides that Alpha is not prevented from "auctioning, selling, transferring, or conveying its interest" "pursuant to any assignment or transfer of any contract right or other right which Alpha Bank may have as a result of the exercise of any remedies which Alpha Bank has against or with respect to Grantor, including, without limitation, [under the KDA Agreements] . . . and (d) the rights of 'Grantee' under and pursuant to that certain Deed to Secure Debt and Security Agreement dated as of December 1, 2007, by and between KDA, as grantor and Pinnacle, as grantee." Id. at ¶ 5.

61.

Mr. Myers became the President and CEO of Alpha on June 17, 2008, just nine (9) days before executing the Unenforceable Agreement. See Affidavit of Johnny R. Myers ("Myers Aff."), attached hereto and fully incorporated herein as Exhibit "U", at ¶ 2.

62.

Mr. Myers signed the Unenforceable Agreement during lunch at the Georgian Club with James A. Blackwell, then Chairman of the Board of Directors of Alpha, and George Nemchik, at the direction of Mr. Blackwell. Id. at ¶¶ 4-5.

63.

Mr. Myers did not discuss the Unenforceable Agreement with anyone before or after signing it, and despite attending all loan committee meetings during his tenure at Alpha, the Unenforceable Agreement was never discussed. Id. at ¶¶ 6-7.

64.

Vivian Battershill-Diaz was a Vice President of Commercial Lending for Alpha and was the loan officer on the Alpha Loan.

65.

George Nemchik's general counsel, Matthew B. Norton, emailed Vivian Battershill-Diaz on April 21, 2008 regarding the Unenforceable Agreement which Mr. Nemchik wanted Alpha to sign.

66.

Mr. Nemchik told Ms. Battershill-Diaz that he needed the Unenforceable Agreement signed because Alpha had a first security deed on the majority of the Pinnacle Property and, in the event of a default, Alpha should pay property taxes to the bondholder, not to the school board or County.  Mr. Nemchik also told Ms. Battershill-Diaz that other lenders were signing the Unenforceable Agreement, which Mr. Nemchik knew was a false statement.

67.

Ms. Battershill-Diaz refused to sign the Unenforceable Agreement.

68.

Alpha did not receive, and was not promised, any benefit(s) as a result of the signing of the Unenforceable Agreement, and there was no consideration to Alpha for the Unenforceable Agreement. <u>See</u> Myers Aff. at ¶ 8.

69.

On July 27, 2008, approximately a month after Mr. Myers signed the Unenforceable Agreement, a Cease and Desist Order was issued to Alpha by the Federal Deposit Insurance Corporation.

**COUNT I**
**DECLARATORY JUDGMENT THAT UNENFORCEABLE AGREEMENT IS VOID**
**(FAILURE OF CONSIDERATION)**

70.

FNBT incorporates Paragraphs 1-69 above as if fully restated herein.

71.

FNBT has substantial uncertainty and insecurity with respect to its rights, status and legal relations to the Alpha Tract and the Alpha Security Deed due to the Unenforceable Agreement.

72.

Until June 26, 2008, there was no question about Alpha's right to foreclose on the Alpha Tract even despite the Bonds.

73.

Pinnacle had repeatedly affirmed and ratified Alpha's superior rights in the Alpha Tract, including in the November 29, 2007 Agreement, the Estoppel Agreement, and the First Amendment.

74.

Omni/Metro was in the same position as Alpha with respect to the Omni/Metro Tract and Omni/Metro Loan and was able to foreclose on its Tract.

75.

There was no consideration for the Unenforceable Agreement, and it should be declared void and invalid.

76.

As such, pursuant to O.C.G.A. § 9-4-1, FNBT requests that the Unenforceable Agreement be adjudged void and invalid.

**WHEREFORE,** FNBT respectfully prays for the following relief:

(A)    Issuance of a Summons and Service of Process as authorized by law;

(B)    Judgment declaring that the Unenforceable Agreement is void and

invalid and that FNBT may foreclose on the Alpha Security Deed;

(C)     Such other and further relief as this Court deems just and equitable.


Respectfully submitted this __27ᵗʰ__ day of June, 2011.

                              **SCHULTEN WARD & TURNER, LLP**

                              Kevin L. Ward, Ga. Bar No. 737020
                              Andrea L. Pawlak, Ga. Bar No. 142541
                              *Counsel for First National Bank of Tennessee*

Schulten Ward & Turner, LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Facsimile)
klw@swtlaw.com
alp@swtlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF TENNESSEE, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | |
| PINNACLE PROPERTIES V, LLC, | ) ) | _____ |
| Defendant. | ) ) ) | |

## CERTIFICATION UNDER L.R. 7.1D

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel for Plaintiff hereby certifies that the above and foregoing pleading is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified this 27th day of June, 2011.

SCHULTEN WARD & TURNER, LLP

Kevin L. Ward, Ga. Bar No. 737020
*Counsel for First National Bank of Tennessee*

260 Peachtree Street, Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Facsimile)
klw@swtlaw.com