**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FIRST NATIONAL BANK OF TENNESSEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PINNACLE PROPERTIES V, LLC, )<br>)<br>Defendant. )<br>_____) | Civil Action<br>File No. 1:11-cv-02087-ODE |

**NON-PARTY CORNERSTONE BANK'S
BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE**

Cornerstone Bank ("Cornerstone") hereby files its brief in support of its Motion to permit its intervention in this action as a matter of right under Fed. R. Civ. P. 24(a)(2) or by discretion pursuant to Fed. R. Civ. P. 24(b)(1)(B), and shows the Court the following:

**PRELIMINARY STATEMENT**

Cornerstone seeks intervention in this Action to protect its security interest in a PILOT Bond issued by the Kennesaw Development Authority which serves as collateral for a $5,000,000.00 loan by Cornerstone to Nemchik, LLC. Following its purchase of certain loan documents from the Federal Deposit Insurance Corporation as Receiver for Alpha Bank, Plaintiff First National Bank of

1

Tennessee ("FNBT") purports to hold a first position security interest on a portion of the real property which Cornerstone contends is governed by the PILOT Bond structure. In its Complaint in this Action, FNBT seeks to have the Court declare invalid a Subordination Agreement which Cornerstone contends makes the FNBT security interest in the real property subject to the PILOT Bond structure. If Cornerstone is correct, FNBT would have to make PILOT Bond payments if it were to foreclose on and hold the real property while revenue generating activities took place on the real property. FNBT wants to rid itself of the obligation to make such PILOT Bond payments by asking this Court to invalidate the Subordination Agreement that FNBT acquired when it bought its present position in its loan. Cornerstone contends that it has both a mandatory and permissive right to intervene in this Action to protect its interests as shown below.

## FACTUAL BACKGROUND[1]

**The FNTB Loan and Issuance of PILOT Bond**

On May 7, 2007, Pinnacle Properties V, LLC ("Pinnacle") executed and delivered a Promissory Note in favor of Alpha Bank & Trust ("Alpha") in the

---

[1] For the purpose of pursuing intervention in this Action, and for this Motion only, Cornerstone will assume the truth of the factual allegations from FNBT's Complaint enumerated below. Cornerstone reserves all rights to plead in response to FNBT's Complaint, including the enumerated assertions, once its Motion to Intervene is granted.

principal amount of $14,250,000.00 (the "Alpha Note"). (Complaint at ¶ 7). The Alpha Note is secured by a Deed to Secure Debt, Assignment of Rents, and Security Agreement dated May 7, 2007, granted by Pinnacle, Due West, LLC, and Forty-One Ventures, LLC in favor of Alpha (the "Alpha Security Deed"), for property described in Exhibit "A" of the Alpha Security Deed (the "Alpha Tract"). (Complaint at ¶ 9). Alpha was placed into receivership by the Federal Deposit Insurance Corporation, as Receiver for Alpha ("FDIC-Alpha") on October 24, 2008. (Complaint at ¶ 15). On September 21, 2009, First National Bank of Tennessee ("FNBT") acquired the Alpha Note from FDIC-Alpha. (Complaint at ¶ 16).

On August 20, 2007, Pinnacle obtained a loan from Omni National Bank, which loan was subsequently transferred to Metro Bank ("Omni/Metro") (the "Omni/Metro Note"). The Omni/Metro Note is secured by a Deed to Secure Debt, Assignment of Rents and Security Agreement dated August 20, 2007, granted by Pinnacle in favor of Omni/Metro (the "Omni/Metro Security Deed"), for property located adjacent to the Alpha Tract (the "Omni/Metro Tract"). (Complaint at ¶ 17). The Alpha Tract and Omni/Metro Tract contain approximately 34 acres (collectively, the "Pinnacle Property"). (Complaint at ¶ 18).

On November 29, 2007, Alpha, Pinnacle, Nemchik, LLC and George

Nemchik entered into an agreement (the "November 29, 2007 Agreement") in which Alpha agreed to transfer the Alpha Tract to the Kennesaw Development Authority ("KDA") as part of revenue bond financing for construction of improvements on the Alpha Tract. (Complaint at ¶ 20). Omni/Metro, Pinnacle, Nemchik, LLC and George Nemchik entered into an agreement identical to the November 29, 2007 Agreement but with respect to the Omni/Metro Tract. (Complaint at ¶ 22).

On December 1, 2007, Pinnacle entered into a Purchase, Sale, Financing, and Option Agreement (the "Purchase Agreement") with KDA as part of the planned revenue bond financing. (Complaint at ¶ 23). The Purchase Agreement provides that KDA will pay Pinnacle $11,624,900.00 at the closing for the purchase of the Pinnacle Property with the balance of the purchase price paid on December 31, 2008. (Complaint at ¶ 24). The Purchase Agreement provides that Pinnacle "shall locate and identify purchaser(s) of Pilot Bonds in the original aggregate principal amount of at least $13,500,000.00. [KDA] shall promptly issue Pilot Bonds in the original aggregate principal amount of $13,500,000.00 to provide funds to pay a portion of the Purchase Price, to fund a debt service reserve fund to secure the Pilot Bonds, to fund capitalized interest on the Pilot Bonds, and to pay the costs of issuing the Pilot Bonds." (Complaint at ¶ 28). KDA gave

pinnacle a Deed to Secure Debt and Security Agreement for the sale of the Alpha Tract and the Omni/Metro Tract on December 1, 2007. (Complaint at ¶ 30).

Also on December 1, 2007, Pinnacle and KDA entered into a Master Pilot Agreement. (Complaint at ¶ 36). The Master Pilot Agreement requires Pinnacle to make payments in lieu of ad valorem taxes in "an amount equal to the ad valorem property taxes that would be due if title to the Project were vested in the Manager [Pinnacle]." (Complaint at ¶ 37). KDA also assigned its right, title, and interest in the Master Pilot Agreement to Regions Bank, as trustee, on December 1, 2007, in an assignment recorded on December 28, 2007. (Complaint at ¶ 43).

KDA issued the "Kennesaw Development Authority Economic Development Revenue Bonds, Series 2007A" (Number RA-1) to Nemchik, LLC on December 20, 2007 in the principal amount of $13,500,000.00 (the "Bonds"). Complaint at ¶ 44). The Bonds are payments in lieu of taxes ("PILOT") bonds such that payments are sought from the Pinnacle Property to the bondholder in lieu of paying ad valorem taxes but without encumbering the Pinnacle Property. (Complaint at ¶ 45). Also on December 20, 2007, Pinnacle, Due West, LLC, and Forty-One Ventures, LLC gave KDA a Quitclaim Deed to the Alpha Tract as well as Limited Warranty Deeds. (Complaint at ¶¶ 47, 48). Alpha, Pinnacle, and KDA also entered into an Estoppel Agreement on December 20, 2007. (Complaint at ¶

49). Omni/Metro, Pinnacle, and KDA entered into an identical Estoppel Agreement but with respect to the Omni/Metro Tract and the Omni/Metro Note.

**Cornerstone's Loan to Nemchik, LLC Secured by the PILOT Bond**

On April 16, 2008, Nemchik, LLC executed and delivered a Promissory Note in favor of Cornerstone Bank ("Cornerstone") in the principal amount of $5,000,000.00 (the "Cornerstone Note"). A true and correct copy of the Cornerstone Note is attached hereto as Exhibit "A" and is incorporated by reference herein. Also on April 16, 2008, Nemchik, LLC executed and delivered a Collateral Assignment of Bond in favor of Cornerstone (the "Bond Assignment"). A true and correct copy of the Bond Assignment is attached hereto as Exhibit "B" and is incorporated by reference herein. The Bond Assignment assigned to Cornerstone a security interest in:

> all of [Nemchik, LLC's] right, title and interest in and to that certain **Kennesaw Development Authority (the "Authority") Economic Development Revenue Bond, Series 2007A, Dated December 20, 2007, in the principal amount of $13,500,000.00 (the "Bond")**, issued to [Nemchik, LLC] pursuant to that certain Trust Indenture and Security Agreement between the Authority and Regions Bank, dated as of December 1, 2007 (the "Indenture") and that certain **Master PILOT Agreement between the Authority and Pinnacle Properties V, LLC dated as of December 1, 2007 (the "PILOT Agreement")**, together with any and all replacement Bonds or other Bonds issued pursuant to the Indenture and the PILOT Agreement from time to time (the "Additional Bonds")

(emphasis added) (Bond Assignment at p. 1). As a result of the Bond Assignment,

Cornerstone currently maintains a security interest in the PILOT Bond and the revenue generated thereunder.

**FNBT's Loan is Subordinated to the PILOT Bond**

As alleged in Plaintiff's Complaint, on June 26, 2008, a document entitled "Agreement" was executed by Johnny R. Myers, President and CEO of Alpha, and George Nemchik for Pinnacle (the "Subordination Agreement").  (Complaint at ¶ 57).  A true and correct copy of the Subordination Agreement is attached hereto as Exhibit "C" and is incorporated by reference herein.[2]  Plaintiff claims that the Subordination Agreement is unenforceable for lack of consideration and goes so far as to define the Subordination Agreement in its Complaint as the "Unenforceable Agreement."  (Complaint at ¶¶ 57, 68).

Cornerstone contends that the Subordination Agreement is an integral part of not only the PILOT Bond structure but also of the modifications to the FNBT loan, and separately of the Cornerstone loan and the security therefore.  Upon information and belief, the Subordination Agreement is supported by consideration between and among Alpha Bank, Pinnacle, George Nemchik, and certain other entities owned or controlled by George Nemchik.  If successful in its efforts to invalidate the Subordination Agreement, FNBT would allegedly be able to exercise

---

[2] The file stamped deed book and page number on Exhibit C match the reference in the paragraph 57 of Plaintiff's Complaint.

its rights to foreclose on the Alpha tract without having to make PILOT Bond payments which support the collateral for Cornerstone's loan. The Subordination Agreement specifically prohibits this result and makes any exercise of the power of sale contained in the Alpha Security Deed subject to the PILOT Bond payment structure.

## ARGUMENT AND CITATION OF AUTHORITY

### A.   Cornerstone Should Be Permitted To Intervene As A Matter Of Right To Protect Its Security Interest In The PILOT Bond Structure.

Intervention as a matter of right is provided for in Rule 24(a)(2), which states that the Court must permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"A party seeking intervention under Rule 24(a)(2) must demonstrate that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. Worlds v. Dep't of Health and Rehabilitative Servs., 929 F.2d 591, 593

(11th Cir.1991) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir.1989)).  Cornerstone meets each of these four requirements and should be permitted to intervene as a matter of right.

First, Cornerstone's Motion is timely because it has been filed at the very outset of this litigation, prior to the filing of a return of service on the Defendant. See E.E.O.C. v. Dakota Enterprises, Inc., 2007 WL 710152, *1 (N.D.Ga. March 6, 2007).

Second, the "transaction" that is the subject matter of this Action is the Subordination Agreement.  Cornerstone has an interest in the continued enforceability of the Subordination Agreement because the PILOT Bond serves as collateral for Cornerstone's loan and the PILOT Bond would be adversely impacted if FNBT were successful in avoiding the terms of the Subordination Agreement.

Third, unless Cornerstone is allowed to pursue this matter in this Court, Cornerstone's interest could be impaired because this Court could make a ruling that affects the Subordination Agreement and thus Cornerstone's security interest in the PILOT Bond securing its loan to Nemchik, LLC.

Fourth, Cornerstone's interest in the Subordination Agreement is separate from Defendant's interest in the Subordination Agreement.  Pinnacle is not a party

9

to Cornerstone's loan to Nemchik, LLC, or to the Bond Assignment. It is unclear whether Pinnacle will protect and defend Cornerstone's and Nemchik, LLC's interests with regard to the Subordination Agreement. Cornerstone contends that its interests can only be adequately protected through intervention in this action.

Accordingly, Cornerstone should be allowed to intervene as a matter of right under Rule 24(a)(2).

### B. Alternatively, Cornerstone Should Be Permitted To Intervene In The Discretion Of The Court.

Cornerstone should also be permitted to intervene under Rule 24(b)(1)(B). Under the statute, upon timely application, anyone may be permitted to intervene in an action who "has a claim or defense that shares with the main action a common question of law or fact." Id. When the court exercises its discretion as to permissive intervention, Rule 24(b)(3) further provides that "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." A claim for permissive intervention is for the sound discretion of the Court, and the Court's decision will not be reversed absent abuse of discretion. Athens Lumber Co., Inc. v. Federal Election Com'n, 690 F.2d 1364, 1367 (11th Cir. 1982).

In this Action, the central issue is whether the Subordination Agreement is enforceable. Cornerstone's claim that the Subordination Agreement is enforceable involves the same questions of law and fact that are involved in this Action.

No delay will occur as a result of this intervention as Cornerstone's Motion has been filed at the very outset of this litigation. Granting Cornerstone's Motion will result in a complete and efficient adjudication of the issues. If Cornerstone's Motion is not granted, Cornerstone will be left to file a separate declaratory judgment action against FNBT to determine the very issue in controversy here, the enforceability of the Subordination Agreement. If Cornerstone is allowed to intervene, there can be a single, efficient judicial determination as to the parties' rights with respect to the Subordination Agreement.

## **CONCLUSION**

Cornerstone is an interested party in this matter and is entitled to intervene as a matter of right. Additionally, the Court has the discretion to permit Cornerstone to intervene because the question of the enforceability of the Subordination Agreement is the precise question already before this Court. Accordingly, Cornerstone respectfully requests the Court to grant this motion.

Furthermore, Granting this motion will not cause undue delay, as this proceeding has only just been initiated.

In accordance with Rule 24(c), Cornerstone has attached as Exhibit "D" a copy of Cornerstone's proposed Intervening Answer and Counterclaim Seeking Declaratory Judgment.

Respectfully submitted this 22nd day of July, 2011.

/s/John J. Richard
JOHN J. RICHARD
Georgia Bar No. 603989
jrichard@taylorenglish.com
SEAN R. SMITH
Georgia Bar No. 663368
ssmith@taylorenglish.com
KYLE M. BAKER
Georgia Bar No. 455088
kbaker@taylorenglish.com

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Telephone: 770-434-6868
Facsimile: 770-434-7376

Attorneys for Cornerstone Bank

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF TENNESSEE, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action |
| v. | ) ) | File No. 1:11-cv-02087-ODE |
| PINNACLE PROPERTIES V, LLC, | ) ) | |
| Defendant. | ) ) | |

## **Local Rule 7.1 D Certification**

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1B.

Respectfully submitted this 22nd day of July, 2011.

                              /s/John J. Richard
                              JOHN J. RICHARD
                              Georgia Bar No. 603989
                              jrichard@taylorenglish.com

                              Attorneys for Cornerstone Bank

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| FIRST NATIONAL BANK OF TENNESSEE, ) ) ) Plaintiff, ) ) v. ) ) PINNACLE PROPERTIES V, LLC, ) ) Defendant. ) ) | Civil Action File No. 1:11-cv-02087-ODE |

## CERTIFICATE OF SERVICE

This certifies that on the 22nd day of July, 2011, I did electronically file the foregoing NON-PARTY CORNERSTONE BANK'S BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE with the Clerk of Court using CM/ECF system which will send notification of such filing to counsel for Plaintiff as follows:

Kevin L. Ward
Andrea L. Pawlak
Schulten Ward & Turner, LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia 30303

And that I served a copy of the foregoing on Defendant through hand delivery and first class U.S. Mail on its registered agent as follows:

Robert J. Proctor
8010 Roswell Road
Atlanta, Georgia 30350

Respectfully submitted this 22nd day of July, 2011.

/s/John J. Richard
JOHN J. RICHARD
Georgia Bar No. 603989
jrichard@taylorenglish.com

Attorneys for Cornerstone Bank